WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Routson, et al., | No. CV-15-8286-PCT-DKD |
| Plaintiffs, | |
| v. | **ORDER** |
| Ryan Zinke, et al., | |
| Defendants. | |

Plaintiffs Donald Routson and Rebecca Routson appealed from an Interior Board of Land Appeals' opinion affirming the rejection of their application to correct a patent. (Doc. 25) The Court has jurisdiction pursuant to the parties' consent to Magistrate Judge jurisdiction, 28 U.S.C. § 636(c), and is reviewing this appeal under the Administrative Procedures Act. (Docs. 9, 22, 30) Both parties have moved for summary judgment. (Docs. 42, 44)

**Factual and Procedural Background**

In 1871, the relevant portion of Yavapai County, Arizona, was first surveyed by S.W. Foreman. (AR 46) Although the record does not contain a complete and legible copy of his field notes, it is undisputed that Foreman described a wash and cornfields in and adjacent to Section 22. (AR 54, 56, 81-92) His survey map appears to indicate a field that is oriented northeast to southwest and straddles Sections 21, 22, 27, and 28.

(AR 40, 81, 111, 134, 442, 443) His survey notes were approved and the survey plat was officially filed in 1872. (AR 46)

In April 1913, Joseph Chiantaretto filed a Homestead Entry Application for 120 acres. (AR 437-39) The Application described the land as "NE¼, SE¼, SE¼, SE¼, S½, SW¼, SE¼, S½, SE¼, SW¼" in Section 22 of Township 16N. (AR 437-39) In September 1914, he filed an Additional Homestead application for 20 acres described as "N½, SW¼, SE½" in Section 22. (AR 430-32) In 1916, Chiantaretto filed notice of his intent to make a final three year proof to establish claim to the land. (AR 417-19) His final proof was supported by testimony from two witnesses and Chiantaretto himself. (AR 400-12) His notice of intent was published and he paid. (AR 398, 413-16, 417-19) In November 1916, the United States issued a patent to Joseph Chiantaretto for the 140 acres described in the Application and Additional Application. (AR 53, 398) ("Chiantaretto Patent"). All of the documents involved in this process describe the land in the same way as the Application and Additional Application.

In 1924, Sidney E. Blout resurveyed this area. His field notes were approved in 1926 and the resurvey plat was refiled in 1928. (AR 46, 93-110, 282-87) The Blout Survey was conducted "under Special Instructions dated February 11, 1924." (AR 282) Those instructions are not in the record. The BLM and IBLA concluded that this was a dependent resurvey. The Routsons characterized it as a resurvey.[1] (Doc. 50) The Blout Survey's map contains considerably more detail than the Foreman Survey. As relevant here, the Blout Survey map appears to show a pasture that is oriented northwest to southeast and straddles the southwest corner of Section 22 and the northwest corner of Section 27. (AR 39, 135, 280, 281[2])

---

[1] The Routsons challenge this characterization of the Blout Survey but do not fully explain the implications or consequences of these different characterizations, nor do they address the implications of a post-patent survey. (AR 53 at n.12; 508-12)

[2] The Court notes that AR 281 was submitted in hard copy to the Court with hand-drawn lines on Section 22 but the shaded area is not explained and does not appear to match the description of land in the Chiantaretto Patent.

- 2 -

In 1964, the United States Department of Agriculture's Soil Conservation Service prepared a conservation plan map for land owned by Harry Chiantaretto ("1964 Chiantaretto Map"). (AR 41, 275) It appears that someone hand-drew pastures and fence-lines onto this map but the record contains no explanation or context for this map.

In January 1982, the Routsons acquired 40 acres from Harry Joseph Chiantaretto's family ("Transferred Property"). (AR 122) It is undisputed that the Routsons purchased and received 40 acres. This acquisition occurred without a survey and the Transferred Property was described as "the South half of the Southeast quarter of the Southwest quarter, and the West half of the Southwest quarter of the Southeast quarter of Section 22." (AR 114, 122) Shortly after purchasing the Transferred Property, the Routsons made improvements, including the addition of an underground irrigation system, to land outside the Transferred Property ("Disputed Property"). (Doc. 46 at 12:7-16)

The Disputed Property is divided into two areas: Area A and Area B. Area A falls entirely within Section 22, is on the north and west side of the Transferred Property, is a sinuous shape that appears to follow the northwest bank of the wash, and encompasses 15.91 acres. Section B falls within Section 27, is south of the Transferred Property, most resembles a triangle in shape, and encompasses 2.5 acres. (AR 277) Based on a review of the maps in the record, it appears that there is a rectangular field that is aligned from the northwest to southeast and that spans Area A (northwest corner), Area B (southeast corner), and the Transferred Property ("Rectangular Field"). (Doc. 43-5 at 2; AR 114)

In 1994, for reasons unrelated to this matter, the U.S. Forest Service commissioned a survey that included the Disputed Property. (Doc. 31 at ¶ 30; Doc. 46 at 12-13) This survey described the Disputed Property as both distinct from the Transferred Property and as excluded in the patent to the Chiantaretto family. (*Id.*) In May 2000, the Routsons submitted Small Tract Act applications for the Disputed Property. (AR 259) In August 2005, the Forest Service denied these applications. (AR 259)

In October 2006, as part of this matter, the Routsons commissioned a survey whose purpose was "to define two separate tracts of land [Area A and Area B] bounded by an existing barbed wire fence and established property boundary lines." (AR 257 at ¶ 9; 277)

In November 2006, the Routsons submitted an Application for Corrective Patent to correct the Chiantaretto patent pursuant to 43 U.S.C. § 1746. (AR 256-77) The Bureau of Land Management ("BLM") denied their Application. (AR 157-61) Their petition for a stay was granted. (AR 79, 138, 141, 149) The BLM's Interior Board of Land Appeals ("IBLA") denied their claim on appeal and on reconsideration. (AR 44-78, 112-36, 143-47) The Routsons' petition for reconsideration was denied as was their request for Director review of the IBLA decision. (AR 1-5, 17-27)

Plaintiffs filed this matter to challenge the BLM's decision and the Court concluded that this challenge was governed by the Administrative Procedures Act ("APA"). (Docs. 25, 30)

**Standard of Review**

The Routsons have appealed from an IBLA decision pursuant to the APA and both parties have now moved for summary judgment. (Docs. 42, 44) In this procedural posture, the Court must decide "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

Under this standard of review, this Court "shall . . . set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] unsupported by substantial evidence in a case." 5 U.S.C. § 706(2)(A), (E).[3] This review "is narrow and a court is not to substitute its judgment for that of the [IBLA]. Nevertheless, the agency must examine the relevant

---

[3] Plaintiffs contend this matter is governed by 5 U.S.C. § 706(2)(F) which applies to situations involving a "trial de novo by the reviewing court." (Doc. 14 at 9) The Court is unaware of any authority that would permit a trial de novo and Plaintiffs have not provided any. Accordingly, the Court concludes this subsection does not apply here.

data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, [the Court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983). Subject to certain narrow exceptions, this Court's review is limited to the record before the IBLA. *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).

## Analysis

The Court has carefully reviewed the evidence in the administrative record, concludes that dispositive questions remain unanswered, and, therefore, remands for further development of the record.

The Blout survey, the 1964 Chiantaretto Map, and the 2006 survey all show the Rectangular Field in approximately the same location.[4] The Foreman Survey shows a similar field but oriented from northeast to southwest. The Court's review of the maps in the record indicates that the Rectangular Field may be bounded by hills on the southwest side. If so, then the Foreman Survey would show these hills as under cultivation, a conclusion so at odds with homesteading land use that it would appear to be an error. *Mary D. Hancock*, 150 IBLA 347, 348-49 (1999) (steep butte would not have been included in entry man's application); *Ramona & Boyd Lawson*, 159 IBLA 184, 194 (2003) (steep untillable hillside would have not have used by entry man).[5] Because consideration of this issue is best left to the BLM in the first instance, the Court will remand this matter for further consideration.

The Courts notes that, if the Foreman Survey was erroneous about the Rectangular Field, then the entire survey could be called into question on remand. Accordingly, the

---

[4] There is another, undated map in the record. (AR 279) It also appears that a third survey was conducted in 1987. (AR 278)

[5] The Court notes that the Routsons did not raise this argument in the Application as a reason the Foreman Survey was incorrect. (AR 116-118)

scope of remand must be to reconsider the BLM's conclusions about the entire Disputed Property, not just the Rectangular Field.

For purposes of remand, the Court notes that there are gaps in the record which does not support the Routsons' claim in general and to Area A of the Disputed Property specifically. For example, the record does not establish that the Routsons have privity with the Chiantaretto family such that they can assert standing to pursue this correction. *George Val Snow (on remand)*, 79 IBLA 262, 265 (1984) (describing requirement for relationship between the patent error and applicant). As the IBLA decision noted, the record also is devoid of any evidence that the entry man used Area A of the Disputed Property. *See Hancock*, 150 IBLA at 348 & n.2; *Lawson*, 159 IBLA at 195-96 (applicants presented affidavits from the granddaughter of the original entry man, tree-ring analysis dating the logs in the cabin, and a photo of the corral). *But see* 1964 Chiantaretto Map (straight and right-angle fence line on north side of wash). Moreover, there is no evidence that the Chiantarettos intended to transfer any portion of the Disputed Property to the Routsons and the Routsons have not explained how the curves of Area A can be reconciled with the right angles of the public land survey system.[6] Nor have they explained how their allegation of error, which encompasses nearly 50% of the Transferred Property, can be reconciled with precedential IBLA cases where the error correction covered one or two percent of the patented land. *See Hancock*, 150 IBLA at 348 (300 foot shift for 107 acre homestead). Finally, the Routsons have not explained how they would propose to shift their land or alleged that they are the successor-in-interest to the shifted land. *Hancock*, 150 IBLA at 353 (patent correction shifts acreage).

The Routsons also argued that the IBLA opinion and the BLM decision were flawed because they did not address the threshold question of error and did not address

---

[6] For example, the *Hancock* application used the public land survey system to describe a curve around a butte: "SW1/4NW1/4NE1/4SE1/4, W1/2SW1/4NE1/4SE1/4, NW1/4NW1/4SE1/4SE1/4, SW1/4SE1/4, SE1/4NW1/4SE1/4, S1/2NE1/4NW1/4SE1/4, S1/2SE1/4SW1/4, S1/2NE1/4SE1/4SW1/4, SE1/4SW1/4SW1/4, S1/2NE1/4SW1/4SW1/4, and NW1/4NE1/4SW1/4SW1/4." 150 IBLA at 348. By contrast, the Chiantaretto Patent simply said "NE¼, SE¼, SE¼, SE¼, S½, SW¼, SE¼, S½, SE¼, SW¼, N½, SW¼, SE½".

equitable considerations. The Court does not view the absence of magic words to be a fatal flaw, especially when the content so clearly addresses the issue. Further, since there was no finding of error, there was no ability to address equitable questions. However, because there will be new written findings on remand, these arguments are moot. Because the Court concludes that remand is appropriate, the Routsons' arguments about an incomplete administrative record are likewise moot.[7] (Doc. 42 at 26-27)

**Motion to Strike**

In their reply, Defendants revisited their argument that the Quiet Title Act applies to Plaintiffs' claim. (Doc. 54 at 18) Plaintiffs moved to strike this argument because the Court has already reviewed, and denied, this argument. (Doc. 55) Defendants responded that this is a subject matter jurisdiction argument that can be raised at any time. (Doc. 56) While that may be so, the Court does not review arguments raised for the first time in reply. Moreover, the application of the APA to this matter is the law of the case and the Court notes that Defendants did not appeal from the denial of their motion to dismiss. Accordingly, Plaintiffs' motion will be denied as moot.

**IT IS THEREFORE ORDERED** denying Plaintiffs' Motion for Summary Judgment (Doc. 42) and denying Defendants' Cross-Motion for Summary Judgment (Doc. 44). This matter is remanded for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion to Strike as moot (Doc. 55).

Dated this 26th day of September, 2017.

_____
David K. Duncan
United States Magistrate Judge

---

[7] The Court notes that the Routsons never alleged any prejudice from an incomplete record.